**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**MOLLY JANE ABBOTT,**
        **Plaintiff,**

**v.**                                                                    **Case No: 5:07cv213/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
        **Defendant.**
_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Abbott's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Molly Jane Abbott, filed applications for benefits on January 16, 2004 claiming an onset date of January 7, 2004.  The applications were denied initially and

on reconsideration and Ms. Abbott requested a hearing before an administrative law judge (ALJ).  A hearing was held on October 21, 2005 at which Ms. Abbott was represented by counsel and testified.  A vocational expert also testified.  The ALJ entered an unfavorable decision on June 30, 2006 (tr. 18-30) Ms. Abbott requested review by the Appeals Council and submitted additional evidence.  The Appeals Council considered the new evidence but declined review.  The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Abbott had not engaged in substantial gainful activity since January 7, 2004; that she had severe impairments of (1) borderline intellectual functioning, (2) depression, (3) personality disorder, (4) degenerative disc disease and (5) obesity; that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform light work except that she could not climb ladders, ropes or scaffolds and must avoid concentrated exposure to workplace hazards and she would be limited to performing simple routine tasks on a repetitive basis; that she was capable of performing her past relevant work as a fast food worker; and that she was not under a disability as defined in the Act (tr. 18-30).

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).  There is no presumption that the Commissioner followed the appropriate

legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot

perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen,* 831 F.2d 1007, 1011 (11ᵗʰ Cir. 1987).


## PLAINTIFF'S MEDICAL HISTORY

Although Ms. Abbott's claimed onset date was in January 2004, the medical record begins several years earlier.  From 1998 through 2002 she made a few visits to the Life Management Center complaining of anxiety and depression.  During that time her medications were adjusted and as of April 3, 2002, she was still diagnosed with adjustment disorder and depressed mood but her anxiety was within normal limits (tr. 236-237).  By September 23, 2002 her anxiety was described as moderately improved (tr. 227-228).  There are no other medical records covering the period prior to Ms. Abbott's claimed onset date.

After she filed her application Ms. Abbott was referred to Robin O'Hearn, Ph.D., a psychologist.  Dr. O'Hearn noted that Ms. Abbott was applying for disability benefits due to anxiety and depression.  She gave a history of anxiety and depression going back to her childhood.  Ms. Abbott said her condition affected her work because she became nervous and would cry.  She said she had worked off and on although she had never really had to work.  During the previous four or five years her husband had been hurt.  He was also accused of molesting her niece and a friend had called the authorities.  "It didn't go anywhere" but she still worried (tr. 118).  At the time of the examination she reported sleep disturbance, crying spells, and panic attacks several times per week.  On mental status examination her mood was moderately anxious and tearful but cooperative.  Her affect was stable and restricted in range.  She was oriented, her remote memory was fair as was her fund of information.  She could relate some recent news events and her capacity for abstract thinking was fair.  Her thought process was logical, coherent and goal directed.  She reported that her daily activities included getting up at 5:30 or 6:00 a.m. to get her children up and dressed and send them off to school.  She would

then go back to bed but then get up to do what needed to be done, including cleaning and cooking.  She read and watched television and tried to cross stitch.  She was able to perform routine activities such as bathing, dressing, and preparing meals and could shop and run errands without assistance.  She did claim to have panic attacks in public.  Dr. O'Hearn's diagnostic impression was panic disorder with agoraphobia and major depressive disorder, severe (tr. 118-120).

On December 20, 2005 and January 25, 2006 Ms. Abbott was examined by Lawrence Annis, Ph.D., a psychologist.  Her history was not significantly different from that given to Dr. O'Hearn.  On examination her mood expression was depressed and anxious.  She appeared to be shy.  She was embarrassed about her poor skills in reading and math and said she had been teased by other children in school.  Her thought expression was rational and coherent but often emotional.  She concentrated well and did not appear to be distracted.  She was oriented.  Her recall was imprecise.  A Wexler Adult Intelligence Scale - Third Edition showed a verbal IQ scale of 74, performance scale of 71 and full scale of 71 which is in the low/normal range and consistent with the verbal examination.  Ms. Abbott attempted the Minnesota Multi-Phasic Personality Inventory - Second Edition but appeared unable to understand the test items sufficiently to complete the examination, so the test was not scored.  Dr. Annis' diagnosis was borderline intellectual functioning, educational deficits, and dysthemic disorder with early onset.  Dr. Annis felt that depression and anxiety had been increasing for some time along with some medical problems and the physical limitations those problems imposed.  There was also emotional distress associated with financial concerns.  He thought that adults with similar clinical pictures may require additional supervision at work and benefit from assistance in making  major money management decisions.  In his opinion, Ms. Abbott could remain on task without special reminders and could carry out brief and simple verbal instructions, less so with written instructions.  She was able to see to her own immediate needs without assistance and did basic homemaking chores.

*Case No: 5:07cv213/RS/MD*

Dr. Annis concluded that Ms. Abbott was probably restricted to employment at manual occupations that did not require extensive education, advanced technical training, or independent judgment in complex situations (tr. 365-369).

On January 3, 2007, Ms. Abbott was examined by George Horvat, Ph.D., a psychologist. Her chief complaint was depression and anxiety. The history she gave was consistent with those she gave Drs. O'Hearn and Annis. Dr. Horvat's observations about plaintiff's memory, concentration, speech, abstract thinking, and social judgment were no different from those noted by Drs. O'Hearn and Annis. Dr. Horvat's diagnosis was major depressive disorder, recurrent, and pain disorder. He felt that there were no psychological reasons why Ms. Abbott could not work (tr. 575-578).

Ms. Abbott was also examined for any physical disability by Sam R. Banner, M.D. Ms. Abbott gave a history of chronic low back pain with pain in her right hip and knee. She said a physician had told her that most of her pain was caused by her posture. She complained of difficulty with prolonged sitting, standing, bending and lifting and had migraine headaches with anxiety. On physical examination there was no limitation noted in her neck. There was no spasm in her back but there was a small degree of limitation in range of motion. Her motor strength was 4/5 in her arms and 3/5 in her legs. There was diminished sensation to pinprick in the right side of her face and right arm. Her reflexes were slightly slow, straight leg raising caused hip pain and right knee pain, there was no muscle atrophy of any muscle group and her muscle tone was normal. Fine and gross motions in both hands were satisfactory. Dr. Banner's diagnosis was chronic low back pain, right knee pain, migraine headaches, dysmetabolic syndrome by history, and obesity. Dr. Banner did not state an opinion on any limitations in activity (tr. 593-596).

On May 13, 2004, plaintiff returned to Life Management. She gave a history of depression and anxiety and admitted having taken a handful of pills sometime in 1998. There is no further record from the Life Management Center (tr. 342-345).

Ms. Abbott's regular treating physician was Jason Hatcher, D.O.  The first notation of a visit to Dr. Hatcher was on November 11, 2004, almost a year after her onset date, when she was seen by Dr. Hatcher's physician's assistant (PA).  She complained of congestion.  The listed diagnosis was classical migraine and lumbago (tr. 287-289).  On a December 2004 visit, Dr. Hatcher noted no evidence of depression or excessive anxiety or agitation (tr. 324).  He made the same notation during a February 2005 visit (tr. 326).  Again in June 2005, Dr. Hatcher noted no evidence of depression, anxiety or agitation and noted that Ms. Abbott's stress was being handled by Xanax (tr. 358-362).  On June 26, 2005, Dr. Hatcher filled out a clinical assessment of pain form in which he opined that Ms. Abbott's pain was so severe as to be distracting from work and require bed rest.  In a physical capacities evaluation form, he opined that she could lift ten pounds occasionally and up to five pounds frequently, could sit and stand for two hours each during an eight hour workday and would be absent for work more than four days per month (tr. 352-353).  On March 2, 2006, Ms. Abbott told the PA that she was not having problems, that life was going fairly well for her and that she was doing so much at home that she was actually getting somewhat bored.  Her physical exam was essentially normal and her Xanax prescription was refilled (tr. 110-111).  Notes from Dr. Hatcher's office from May 2, 2006, July 13, 2006 and July 27, 2006 continued to note that she was doing fairly well and her physical examination was unremarkable (tr. 668-674).  On November 17, 2006, she told the PA that she was having some pain in her right knee and there was some pre-patellar swelling on examination, but she was otherwise normal (tr. 677).  On March 7, 2007, she complained of a rash on her neck and an abscessed tooth and on October 24, 2007 she reported that she was doing very well.  Her physical examination was normal (tr. 680-682).

## DISCUSSION

Ms. Abbott argues that the ALJ erred in failing to apply the appropriate standard when he found Ms. Abbott's anxiety to be non-severe, in failing to give appropriate weight to Dr. Hatcher's opinion, and in not adequately considering the impact of her obesity on her ability to work, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Abbott was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.    Anxiety.

Ms. Abbott first contends that the ALJ erred in not applying the appropriate standard when he found Ms. Abbott's anxiety to be non-severe. At step two the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 1520(c). The burden at this step is on the claimant. *Chester v. Bowen, supra.* The Commissioner's regulations provide:

What we mean by an impairment(s) that is not severe.

(a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

**(5) Responding appropriately to supervision, co-workers and usual work situations; and**

**(6) Dealing with changes in a routine work setting.**

**20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:**

> **As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.**

**SSR 85-28, 1985 WL 56856.**

**In *Brady v. Heckler*, 724 F.2d. 914 (11ᵗʰ Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that**

> **[s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.**

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11ᵗʰ Cir. 1986).  It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue.  And the ALJ's findings must be supported by substantial evidence.

Here there was substantial record evidence to support the ALJ's finding. Although the earlier medical records document anxiety, Dr. Hatcher's records from 2004 onward show that Ms. Abbott's anxiety was medically under control and that there was no evidence of depression or agitation.  Dr. Hatcher's notes indicated that Ms. Abbott was doing well and her physical examinations were unremarkable.

It is true that the examining psychologists gave diagnoses of anxiety, but nowhere did they note that Ms. Abbott's anxiety was not treatable, and the prescription of Xanax showed that it was.  Thus, the ALJ did not err and plaintiff is not entitled to reversal on this ground.

### 2.    Dr. Hatcher's opinion.

Ms. Abbott next contends that the ALJ erred in not giving appropriate weight to Dr. Hatcher's opinion.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11ᵗʰ Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11ᵗʰ Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11ᵗʰ Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11ᵗʰ Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where

a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1);  *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart,* 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

The ALJ rejected the opinions set out on the clinical assessment of pain forms signed by Dr. Hatcher because they were totally at odds with his own clinical record, as summarized above. Dr. Hatcher and his PA noted little in the way of complaints on any visit, but the opinions stated on the forms frankly appeared to describe another person. It was appropriate for the ALJ to reject Dr. Hatcher's opinions given the content of his clinical record, and Ms. Abbott is not entitled to reversal on this ground.

3.    Obesity.

Finally, Ms. Abbott argues that the ALJ did not apply the appropriate standard in considering her obesity, which he found to be severe. In fact, the ALJ did consider her obesity, and cited the appropriate regulatory standard, Social Security Ruling 02-1p (tr. 22). He found that obesity was one of Ms. Abbott's severe impairments, and noted that the effects of her obesity were considered throughout the remainder of the decision (tr. 20).

SSR 02-1p provides that body mass listings do not correlate with any specific degree of functional loss. *See* 67 Fed. Reg. 57859, at *57861. The ruling states that "as with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id*. at *57861-62.

The ALJ found that "[t]he claimant is obese. Though this impairment is not a 'listed' impairment, the effect that this condition has on the claimant's overall ability to perform work related functions, either singly or in combination with other impairments, has been considered in accordance with SSR 020-1." Ms. Abbott contends that this is insufficient because the ALJ failed to consider the effects of Ms. Abbott's obesity, but clearly the ALJ considered those effects. SSR 02-1 makes it clear that the impairment is evaluated in the same manner as other impairments. *See* SSR 02-1p. Because nothing in the medical records show that Ms. Abbott has

additional limitations due to her obesity, her contention is not persuasive. *See McNamara v. Astrue*, 590 F.3d 607, 611-12 (8th Cir. 2010) ("Given that neither the medical records nor McNamara's testimony demonstrates that her obesity resulted in additional work-related limitations, it was not reversible error for the ALJ's opinion to omit specific discussion of obesity."). The ALJ did not err, and Ms. Abbott is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 18th day of August, 2010.

/s/ *Miles Davis*
  **MILES DAVIS**
  **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).